[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 07-13028

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 18, 2008
THOMAS K. KAHN
CLERK

D. C. Docket No. 06-00308 CV-4-SPM-WCS

NUVOX COMMUNICATIONS, INC.,
XSPEDIUS COMMUNICATIONS, LLC,

                                                          Plaintiffs-Appellees,

    versus

BELLSOUTH COMMUNICATIONS, INC.,

                                                          Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

**(June 18, 2008)**

Before EDMONDSON, Chief Judge, HILL and ALARCÓN,[*] Circuit Judges.

PER CURIAM:

---

[*]Honorable Arthur L. Alarcón, United States Circuit Judge for the Ninth Circuit, sitting by designation.

This case arises from a decision of the Florida Public Service Commission (the "Florida Commission"). The Florida Commission, relying on a Federal Communications Commission (FCC) decision, concluded that federal law did not require BellSouth ("Defendants") to combine (or "commingle") facilities that must be provided under 47 U.S.C. § 271 with those that must be provided under 47 U.S.C. § 251. Nuvox Communications, Inc. and Xspedius Communications, LLC ("Plaintiffs") challenged the Florida Commission's decision in federal court, and the district court ruled that the decision was contrary to federal law. We affirm the district court decision.

The Telecommunications Act of 1996

The Telecommunications Act of 1996 (the "Telecommunications Act") imposes a series of requirements on incumbent local exchange carriers ("incumbent LECs")--companies like BellSouth that traditionally have provided local telephone service in a particular geographic area. See AT&T Corp. v. Iowa Utils. Bd., 525 U.S. 366, 371 (1999). Before the Telecommunications Act, most areas were served by a single local exchange carrier. Because these incumbent LECs were without competition and often were compensated based on how much

they spent, incumbent LECs had an incentive to construct inefficient networks. See MCI Worldcom Commc'ns, Inc. v. Bellsouth Telecomms., Inc., 446 F.3d 1164, 1166–67 (11th Cir. 2006). Congress enacted the Telecommunications Act to "uproot[] the monopolies that traditional rate-based methods had perpetuated." Verizon Commc'ns Inc. v. FCC, 535 U.S. 467, 488 (2002).

One of the affirmative duties imposed on incumbent LECs by the Telecommunications Act is to allow new competitors--known as competitive local exchange carriers ("competitive LECs")--to lease parts of the incumbent LECs' telephone networks. 47 U.S.C. §§ 153(29), 251(c)(3). Incumbent LECs are required to make available their "unbundled network elements" ("UNE"s); and the rates that the incumbent LECs may charge for access to these elements must be based on cost. Id. § 251(c)(3), 252(d)(1)(A). This practice keeps the prices very low. Verizon Commc'ns, 122 S. Ct. at 1661.

The duties imposed by section 251 are implemented through "interconnection agreements" between incumbent LECs and competitive LECs. The Telecommunications Act requires LECs to negotiate in "good faith" the "particular terms and conditions of agreements to fulfill the duties described in [section 251(b) and (c)]." 47 U.S.C. § 251(c)(1). If negotiations are unsuccessful, either party may ask the state commission to arbitrate open issues that the parties

3

have not resolved.  In deciding these issues, the state commission must adhere to the requirements of the statute and the FCC's implementing regulations. 47 U.S.C. § 252(b), (c).

The Telecommunications Act also established a process by which the Bell operating companies ("BOCs")[1] could obtain authority from the FCC on a state-by-state basis to provide long-distance service.  47 U.S.C. § 271(d).  Under section 271, the FCC is authorized to grant a BOC's application to provide long-distance service in a given state if the BOC satisfies certain statutory criteria designed to confirm that the local market in the state is open to competition.  Id. at § 271(d)(3).  The BOC must implement a "competitive checklist"--a list of services and facilities that the BOC must make available to competitive LECs operating in the state.  § 271(c)(2)(B).[2]  The services and facilities on this checklist include some of the same network elements that the FCC concluded should be subject to unbundling under section 251.

In 2003, the FCC ruled that elements that are required to be made available only under section 271--unlike elements required under section 251--need not be

---

[1]The BOCs are a set of companies, including BellSouth, that formerly were associated with the Bell system.  47 U.S.C. § 153(4).

[2]The FCC has held that the obligations of the section-271 competitive checklist continue even after the BOC obtains authority to provide long-distance service in a given state.

provided in combined, prepacked form.  See Report and Order and Order on Remand and Further Notice of Proposed Rulemaking, Review of the Section 251 Unbundling Obligations of Incumbent Local Exchange Carriers, 18 FCC Rcd 16978, 17384–86, ¶¶ 653–55 (2003) ("Triennial Review Order").  Also, a different pricing scheme applies to facilities that must be made available only under section 271.  See id. at 17386, ¶¶ 656–57.  The D.C. Circuit affirmed the FCC's decision, concluding that these were "important respects" in which section 251 and section 271 differ.  U.S. Telecom Ass'n v. FCC, 359 F.3d 554, 589-90 (D.C. Cir. 2004).

The FCC also eliminated its general ban on "commingling, " defined as combining loops or loop-transport combinations obtained as unbundled network services with services obtained at wholesale from an incumbent LEC. See Triennial Review Order, 188 FCC Rcd at 17342–43, ¶ 579. The FCC's commingling requirement contains the statement: "[A]n incumbent LEC shall permit a requesting telecommunications carrier to commingle an unbundled network element or a combination of unbundled network elements with wholesale services obtained from an incumbent LEC." 47 C.F.R. § 51.309(e).

Procedural History

5

Plaintiffs filed a petition for arbitration with the Florida Commission on 11 February 2004. The Florida Commission concluded that the FCC did not intend for its commingling requirement to apply to section-271 elements. The Florida Commission also decided that reading the FCC's general discussion of commingling to require combinations of section-251 and section-271 facilities would be contrary to federal policy. After the parties drafted an interconnection agreement in conformance with the Arbitration Order, the Florida Commission approved the final agreement.

Plaintiffs then challenged the Florida Commission's orders in the United States District Court for the Northern District of Florida. The district court reversed the Florida Commission; the district court concluded that the FCC's commingling requirements mandated that BellSouth combine facilities provided under section 271 with those that must be provided under section 251. Defendants appealed.

<u>Standard of Review</u>

This Court reviews <u>de novo</u> questions of law. <u>AT&T Commc'ns of the S. States, Inc. v. BellSouth Telecomms., Inc.</u>, 268 F.3d 1294, 1296 (11th Cir. 2001). "Federal courts generally accord no deference to the state commission's

interpretations of federal law." <u>MCI Worldcom</u>, 446 F.3d at 1170 (internal quotation omitted). The state agency's findings of fact "will not be disturbed unless they are arbitrary and capricious or not supported by substantial evidence." <u>Id.</u>

Discussion

The issue in this case is whether BellSouth--an incumbent LEC--is required to commingle section-271 elements with section-251 unbundled network elements. The FCC requires an incumbent LEC to "permit a requesting telecommunications carrier to commingle an unbundled network element or a combination of unbundled network elements with <u>wholesale services</u> obtained from an incumbent LEC." 47 C.F.R. § 51.309(e) (emphasis added). Because the district court correctly concluded that section-271 elements are wholesale services, we affirm the district court's judgment.

Both Rule 51.309 and the FCC's Triennial Review Order make clear that the commingling requirement applies to wholesale facilities and services. Under Rule 51.309(e),

7

> [A]n incumbent LEC shall permit a requesting telecommunications carrier to commingle an unbundled network element or a combination of unbundled network elements with <u>wholesale services</u> obtained from an incumbent LEC.

47 C.F.R. § 51.309(e) (emphasis added). Subsection (f) of Rule 51.309 contains this language:

> Upon request, an incumbent LEC shall perform the functions necessary to commingle an unbundled network element or a combination of unbundled network elements with <u>one or more facilities or services that a requesting telecommunications carrier has obtained at wholesale</u> from an incumbent LEC.

<u>Id.</u> at § 51.309(f) (emphasis added).

The Triennial Review Order defines commingling as "the connecting . . . of a UNE, or a UNE combination, to one or more facilities or services that a requesting carrier has obtained at <u>wholesale</u> from an incumbent LEC." Triennial Review Order, 18 FCC Rcd at 17342, ¶ 579 (emphasis added). Also stated in Paragraph 579 of the Triennial Review Order:

> [A]n incumbent LEC shall permit a requesting telecommunications carrier to commingle a UNE or a UNE combination with <u>one or more facilities or services that a requesting carrier has obtained at wholesale</u> from an incumbent LEC.

<u>Id.</u> (emphasis added).

The FCC has, on several occasions, made clear that section-271 elements are "wholesale." <u>See</u> <u>Petition of Qwest Corp. For Forbearance Pursuant to 47</u>

8

U.S.C. § 160(c) in the Omaha Metro. Statistical Area, Memorandum Opinion and Order, 20 FCC Rcd 19415, 19448-50, 65-68 (2005) (referring repeatedly to section 271(c) requirements as "wholesale" obligations); Petition of ACS of Anchorage, Inc. Pursuant to Section 10 of the Communications Act of 1934, as amended, for Forbearance from Sections 251(c)(3) and 252(d)(1) in the Anchorage Study Area, Memorandum Opinion and Order, 22 FCC Rcd 1958, 1962-63 (2007) (describing an earlier order as "rel[ying] on the continued availability of wholesale access to Qwest's network under section 271") (emphasis added).  Defendants have identified no evidence to suggest that section-271 elements are not wholesale services or facilities.  Indeed, Defendants' own expert testified before the Florida Commission that section-271 elements are wholesale.

Defendants raise four separate arguments in support of their position that the commingling requirement does not apply to section-271 elements: (1) the FCC declined to apply its combination rule to section-271 elements; (2) the commingling rule only applies to "wholesale services" that are subject to FCC tariffs; (3) the elimination of language in the Triennial Review Order suggests that the FCC intended to except section-271 elements from the commingling

9

requirement; and (4) the district court's ruling would revive the anti-competitive UNE platform.[3]  We do not find Defendants' arguments persuasive.

The FCC's combination rule is not important to the issue here.  Defendants point to footnote 1990 of the Triennial Review Order that states, "We decline to require BOCs, pursuant to section 271, to combine network elements that no longer are required to be unbundled under section 251." 18 FCC Rcd at 17386, ¶ 655 n.1990.   This footnote addresses <u>combinations</u> of section-271 elements with other section-271 elements, not the commingling of section-251 elements with section-271 elements.  <u>See</u> <u>USTA II</u>, 359 F.3d at 589-90 (rejecting plaintiff's argument that the rule that applies to combinations of section-251 elements with section-251 elements should also apply to section-271 elements).

We reject Defendants' argument that Rule 51.309 applies only to those wholesale services that are tariffed.  As the district court correctly noted, that tariffed services are listed as examples of wholesale services does not indicate that such lists are exhaustive.  Language like "e.g." and "including" indicates that tariffed services were being used as examples of services eligible for

---

[3]The set of combined unbundled network elements that provides all of the facilities necessary to provide telecommunications service is known as the "UNE platform."

commingling. Defendants' interpretation cannot be reconciled with the expansive language in both Rule 51.309 and in the Triennial Review Order.

We also reject Defendants' argument that the removal of language in Paragraph 584 of the Triennial Review Order was a clear decision to exclude section-271 elements from commingling. The review order originally stated in Paragraph 584:

> [W]e require that incumbent LECs permit commingling of UNEs and UNE combinations with other wholesale facilities and services, including <u>elements offered pursuant to section 271 and</u> any services offered for resale pursuant to section 251(c)(4) of the Act.

18 FCC Rcd at 17347, ¶ 584 (2003). The final version did not contain the underlined language. Triennial Review Order Errata, 18 FCC Rcd at 19022, ¶ 27.

As amended, Paragraph 584 pertains exclusively to 251(c)(4) resale and makes clear that services obtained under that statute are included in the commingling requirement. We agree with the district court that the alteration of Paragraph 584 reasonably reflects the FCC's decision to remove language that could be read as conflating 251(c)(4) resale with section-271(c) checklist obligations. The elimination of potentially confusing language from Paragraph 584 does not narrow the otherwise broad "wholesale services" language in the commingling requirement to exclude specifically section-271 elements.

11

In addition, we do not find Defendants' argument about the UNE platform persuasive. Defendants contend that requiring commingling of section-251 and section-271 elements would essentially revive the UNE platform—which was eliminated as anti-competitive because it allowed competitive LECs to obtain all the necessary elements for a telecommunications network from incumbent LECs at a lower cost than they would incur if they developed the facilities on their own. See AT&T, 525 U.S. at 388-91; U. S. Telecom Ass'n v. FCC, 290 F.3d 415 (D.C. Cir. 2002). We disagree. Incumbent LECs are permitted to charge market rates for section-271 elements, making them distinguishable from the cost-based facilities mandated under the original UNE platform.

AFFIRMED.