# In the
# United States Court of Appeals
## For the Seventh Circuit

Nos. 08-1489, 08-1494

ILLINOIS BELL TELEPHONE COMPANY, INC.,

*Plaintiff-Appellee*,

*v.*

CHARLES E. BOX, *et al.*, in their official capacities as
  commissioners of the Illinois Commerce
  Commission; and GLOBALCOM, INC.,

*Defendants-Appellants*.

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 05 C 1149—**Joan B. Gottschall**, *Judge*.

ARGUED SEPTEMBER 19, 2008—DECIDED NOVEMBER 26, 2008

Before POSNER, RIPPLE, and EVANS, *Circuit Judges*.

POSNER, *Circuit Judge*.  Illinois Bell brought this suit
for declaratory and injunctive relief against the Illinois
Commerce Commission, which regulates the telecom-
munications industry in Illinois, to prevent the com-
mission from requiring Illinois Bell to sell Globalcom
(another telecom company, which has intervened as a

defendant) some of Illinois Bell's services at cost, a requirement that Illinois Bell claims is preempted by federal regulation of telecommunications. The district judge granted summary judgment in favor of Illinois Bell. Although the dual federal-state regulatory scheme for the telecommunications industry is complex and even arcane, the parties did not have to assault us with 206 pages of briefs, brimming with jargon and technical detail, in order to be able to present the issues on appeal adequately. Clarity, simplicity, and brevity are underrated qualities in legal advocacy.

Illinois Bell is what is called an "incumbent local exchange carrier," which means that it was a provider of local telephone service when the Telecommunications Act of 1996 was enacted. Section 251 of that Act, 47 U.S.C. § 251, imposes various duties on such carriers, including (in subsection (c)(3)) the duty to provide "any requesting telecommunications carrier" with "nondiscriminatory access to network elements on an unbundled basis." A network element is a service, such as switching, that is a component of telecommunications service. To "unbundle" it is to make it purchasable separately from the telecommunications service itself. Switching, in our example, is just one stick in the bundle that is an end-to-end phone call or data transmission.

Despite the broad wording of subsection (c)(3), subsection (d)(2) directs the Federal Communications Commission to decide which services shall be deemed "network elements" within the meaning of subsection (c)(3) and thus must be offered on an unbundled basis, and further

directs the Commission, in making that decision, to consider (A) whether access is "necessary" and (B) whether "failure to provide access . . . would impair the ability of the telecommunications carrier seeking access to provide the services that it seeks to offer." (What (A) adds to (B) is unclear, but of no moment.) Once the FCC determines that unbundled access to some service is required by section 251(d)(2), a carrier wanting access must negotiate with the incumbent local exchange carrier on price and other terms of access. If the carriers cannot reach agreement, their disagreement is submitted to what is called "arbitration" but is really the first stage in a regulatory proceeding. For the arbitration decision (and also any agreement reached by negotiation) must be submitted to the relevant state regulatory commission (in this case the Illinois Commerce Commission) for approval, §§ 252(a), (e); see *Illinois Bell Telephone Co. v. Box*, 526 F.3d 1069, 1070 (7th Cir. 2008); and that commission is authorized by the Act to set the "just and reasonable rate" for access. This rate is defined as the incumbent local exchange carrier's cost, § 252(d)(1)(A)(i), and further defined, by the FCC, as a rate equal to the cost to an efficient carrier of providing the service in question with newly purchased equipment. 47 C.F.R. § 51.505(a). Such a rate (of which the best-known version is called "TELRIC") is highly favorable to the competitors of the incumbent local exchange carrier. The Supreme Court has described it as a rate just above the confiscatory level. *Verizon Communications, Inc. v. FCC*, 535 U.S. 467, 489 (2002).

The problem to which these provisions are Congress's solution is that of bottleneck facilities. *AT&T Corp. v Iowa Utilities Board*, 525 U.S. 366, 388 (1999). Suppose Illinois Bell has a switching facility for routing phone calls to

their destinations, and a competing carrier such as Globalcom would like to route its own customers' calls through that facility. Suppose that the facility has a lot of excess capacity and so could handle Globalcom's traffic at minimal cost and that it would be prohibitively expensive for Globalcom to build its own facility because it wouldn't have enough traffic to be able to recoup its investment. Then if Illinois Bell refused to grant Globalcom access to its switching service at a cost close to Illinois Bell's cost, Globalcom would be unable to compete.

But suppose instead that the market for Globalcom's services is large enough to enable the company to recoup the cost of investing in its own switching facility. Globalcom would still prefer to piggyback on Illinois Bell's facility, hoping the Illinois Commerce Commission would force Illinois Bell to charge a price so low that Illinois Bell would be in effect subsidizing its competitor. Section 251(d)(2) of the Telecommunications Act, by authorizing the FCC to require unbundled access at cost *only* to network services that the requesting carrier (Globalcom in this case) needs in order to be able to serve its customers, steers a middle course between requiring the incumbent local exchange carrier to sell its network services to competitors at cost and not requiring it to sell them to anyone. As long as requesting carriers rely on network services supplied by incumbent local exchange carriers, competition is hampered because the services continue to be monopolies and require regulation. See Graeme Guthrie, "Regulating Infrastructure: The Impact on Risk and Investment," 44 *J. Econ. Lit.* 925 (2006).

Hence "one goal" of limiting the requirement of unbundled access at cost to network services that requesting carriers need rather than just want "is to wean [those carriers] from reliance on unbundled network elements so that fully competitive landline networks will be built, now that there is widespread agreement that local service is no longer a natural monopoly." *Illinois Bell Telephone Co. v. Box*, *supra*, 526 F.3d at 1073. The 1996 Act thus creates a framework for the gradual deregulation of the industry as advances in technology and the expansion of markets provide increased scope for competition with the incumbent local exchange carriers, formerly regional monopolists.

In proceedings under section 251 the FCC has decided which network services are to be brought under (c)(3) and thus opened to access at cost by carriers competing with incumbent local exchange carriers and which not, and its decision has been affirmed. *Covad Communications Co. v. FCC*, 450 F.3d 528 (D.C. Cir. 2006). For example, consistent with our earlier discussion, the FCC has decided that in large markets, which can support multiple switching centers, unbundled access at the incumbent local exchange carrier's cost is not required, because competing carriers have enough traffic to be able to support their own centers. *Id*. at 533-36.

But the Illinois Commerce Commission, dissatisfied with the FCC's determination, has, on the authority of an Illinois statute, 220 ILCS 5/13-801(d), ordered Illinois Bell to sell additional network services to such carriers at cost. So although, for example, the FCC does not count local

switching as a network element that has to be unbundled, the ICC requires that it be unbundled; and likewise certain high-capacity loops (the wires that connect the customer's premises to the local switching facility). The commission has not specified the maximum price that Globalcom can be required to pay for the particular services to which it is demanding access, but the Illinois statute that the commission enforces forbids the incumbent local exchange carrier to charge a price for network services that exceeds the carrier's cost. 220 ILCS 5/13-801(g).

The state commission wants in effect to overrule the FCC's decision not to require additional unbundling at the incumbent local exchange carrier's cost. It would not be physically impossible for Illinois Bell to comply with both federal and state law; it's not as if the FCC wanted Illinois Bell to use copper cable and the state plastic cable. But it would be contrary to the FCC's interpretation and application of federal law. The FCC has been charged by Congress with determining the optimal amount of unbundling—enough to enable carriers like Globalcom to compete with Illinois Bell but not so much as to enable them to take an almost free ride on services that Illinois Bell has spent a lot of money to create. That judgment, which is certainly within the power of the federal government to make, is without force if a state can require more unbundling at cost than the FCC requires.

It is true that section 251 contains a savings clause: the FCC "shall not preclude the enforcement of any regulation, order, or policy of a State commission that

(A) establishes access and interconnection obligations of local exchange carriers; (B) is consistent with the requirements of this section [section 251]; and (C) does not substantially prevent implementation of the requirements of this section." 47 U.S.C. § 251(d)(3). But the access requirements imposed by the Illinois Commerce Commission *are* inconsistent with the requirements of section 251 and *do* prevent their implementation. As in *Illinois Bell Telephone Co. v. Box*, *supra*, 526 F.3d at 1072-73, where we invalidated a similar order, the ICC is requiring what the FCC has determined, in accordance with the standard set forth in section 251(d)(2), should not be required. We explained that requiring access merely to enable interconnection is much less problematic than requiring other forms of access, *id*. at 1071-72, because the Telecommunications Act requires an incumbent local exchange carrier "to provide, for the facilities and equipment of any requesting telecommunications carrier, interconnection with the local exchange carrier's network." 47 U.S.C. § 251(c)(2). The access that Globalcom seeks in this lawsuit is not to enable interconnection with Illinois Bell's network; it has that already.

In addition to requiring Illinois Bell to sell network services to other carriers at cost, the Illinois Commerce Commission has ordered it to sell certain non-network services, such as "splitting," at cost. Splitting (so far as pertains to this case) is dividing a telecommunications line to enable it simultaneously to carry different messages, such as high-speed data and ordinary phone calls. The defendants want Illinois Bell to unbundle splitting from its line charge, though they acknowledge

that splitting is not a network element; it enhances rather than enables a telecommunications service. Section 251 of the Telecommunications Act of 1996, as we know, requires unbundling only of network elements (services), and this only if the unbundling is necessary to overcome a bottleneck. The Act does not say in so many words that the state commission cannot require the unbundling of non-network elements any more than it says that about unbundling network elements, but to allow a state commission to require it would defeat the Act's goals. *Verizon New England, Inc. v. Maine Public Utilities Comm'n*, 509 F.3d 1, 9 (1st Cir. 2007). Remember that the Act seeks to create a competitive telecommunications industry, in which carriers that compete with incumbent local ex-change carriers are allowed to demand access at a price below the market price to those carriers' facilities only to the extent necessary to prevent those carriers from using their facilities to throttle their competitors. So it is only bottleneck facilities that competitors can demand access to—the facilities they need to provide a network service. They do not need splitting to provide network service, and they must therefore obtain it at market rates rather than at cost. Likewise with respect to the other non-network services that the Illinois commission ordered Illinois Bell to provide.

The defendants retreat to another provision of the Telecommunications Act of 1996, section 271, which entitles telecommunications carriers to demand access to unbundled services beyond those to which section 251 entitles them. That section imposes duties not on incumbent local exchange carriers as such, it is true, but rather on "Bell operating companies" that wish to provide long-

distance service. The term refers to telephone companies (or their successors) that became independent when AT&T was broken up in the early 1980s. But Illinois Bell *is* one of those companies, as well as being an incumbent local exchange carrier.

When the Bell operating companies were first spun off from AT&T, it was feared that they would use their regional monopolies to control long-distance service; that fear has diminished but the companies continue to face additional regulation when they enter the long-distance market. The duties that section 271 imposes include requirements of providing unbundled access, for example to local switching, that go beyond the access requirements that the FCC has imposed on incumbent local exchange carriers under section 251(d)(2). 47 U.S.C. § 271(c)(2)(B).

A Bell operating company that wants to provide long-distance service must apply to the FCC for authorization, § 271(d)(1), and Illinois Bell has done that and has been authorized, and so has assumed the access duties that section 271(c)(2)(B) specifies. But unlike section 13-801 of the state statute, section 271 of the federal statute does not require a carrier to charge a rate no higher than its cost. As acknowledged by the Illinois commission and noted and approved in the only two appellate decisions to have addressed the issue, the FCC allows the market rate to be charged. *Nuvox Communications, Inc. v. BellSouth Communications, Inc.*, 530 F.3d 1330, 1334-35 (11th Cir. 2008) (per curiam); *Verizon New England, Inc. v. Maine Public Utilities Commission*, *supra*, 509 F.3d at 9 ("one issue is whether the states can require that section 271 elements be

priced at TELRIC rates. The FCC orders provide carriers the authority to charge the potentially higher just and reasonable rates, in order to limit subsidization and to encourage investment by the competitors. To allow the states to require the lower TELRIC rates directly conflicts with, and undercuts, the FCC's orders").

We emphasize, in light of the defendants' equivocation over the difference between the "just and reasonable" rate that the Illinois Commerce Commission would fix for unbundled access to section 271 services and the rate that the FCC permits—namely the market price—that the market rate *has* to be higher, and so there is a real conflict between the federal and state regulatory schemes. Otherwise Globalcom's desire to obtain access under the state statute would make no sense; Globalcom would pay the same price for access to Illinois Bell's services whether that access was required by the Illinois Commerce Commission or by the FCC. More fundamentally, if the rate for unbundled access under section 271 were identical to the rate under section 251, it wouldn't make sense for Congress to have required a showing of "necessity" and "impairment" by competing carriers wanting those cost-based section 251 rates; for no similar showing is required when unbundled access is sought under section 271.

Unlike a state's regulatory authority under the savings clause of section 251, moreover, the state has only a consultative role in proceedings under section 271. 47 U.S.C. § 271(d)(2)(B). But we must consider the bearing of section 252, which regulates agreements between incumbent local exchange carriers and competing carriers concerning the terms of unbundled access under section

251. Those agreements are subject to approval and price regulation by the state commission, and the defendants argue that any request by a competing carrier for access under section 271 must be treated likewise. This makes no sense, however, not only because section 252 doesn't mention section 271 but also because the consultative role to which section 271 confines the state commissions would be read out of the Telecommunications Act if the defendants were correct, since section 252 allows the state commission to set price.

The defendants cite *Qwest Corp. v. Public Utilities Commission of Colorado*, 479 F.3d 1184, 1197-99 (10th Cir. 2007), but all the court held in that case was that an agreement on the terms of access required by section 251 must be filed with the state commission under section 252 even if the agreement also sets terms for access under section 271. The court was explicit that the state commission's power over such an agreement is limited to the terms in the agreement relating to access under section 251. The *Verizon New England* decision holds the same, 509 F.3d at 7, as does *Southwestern Bell Telephone, L.P. v. Missouri Public Service Commission*, 530 F.3d 676, 682-83 (8th Cir. 2008). So while network services provided by incumbent local exchange carriers that are necessary to enable a competing carrier to provide service are to be priced at cost, any additional network services that a Bell operating company (that wants to provide long-distance service) must provide unbundled access to can be priced at the market price.

AFFIRMED.