# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3701

_____

Southwestern Bell Telephone, L.P.,
doing business as SBC Missouri,

       Plaintiff - Appellee,

v.

Missouri Public Service Commission;
Jeff Davis; Connie Murray; Steve Gaw;
Robert M. Clayton III; Linward
Appling, in their official capacities as
commissioners of the Missouri Public
Service Commission and not as
individuals,

       Defendants,

Big River Telephone Company, LLC,

       Defendant - Appellant,

Birch Telecom of Missouri, Inc.; Ionex
Communications, Inc.,

       Defendants,

NuVox Communications of Missouri,
Inc.; Socket Telecom, LLC; XO
Communications Services, Inc.; XO
Missouri, Inc.; Xspedius Management
Co. of Kansas City, LLC; Xspedius

Appeals from the United States
District Court for the Eastern
District of Missouri.

Management Co. Switched Services,   *
LLC,   *
  *
        Defendants - Appellants,   *
  *

Charter Fiberlink–Missouri, LLC;   *
Navigator Telecommunications, LLC;   *
WilTel Local Network, LLC; MCI   *
Communications Services, Inc.;   *
MCImetro, LLC,   *
  *
        Defendants,   *
  *
Sprint Communications Company, L.P.,   *
  *
        Defendant - Appellee.   *
_____   *
  *
Verizon New England, Incorporated;   *
Verizon New York, Incorporated;   *
Verizon Pennsylvania, Incorporated;   *
Verizon Maryland, Incorporated;   *
Verizon Washington, Incorporated;   *
Verizon Virginia, Incorporated,   *
  *
        Amici on Behalf of   *
        Appellee Southwestern   *
        Bell Telephone, L.P.,   *
        doing business as SBC   *
        Missouri.   *

_____

No. 06-3726

_____

Southwestern Bell Telephone, L.P.,   *
doing business as SBC Missouri,   *
  *
        Plaintiff - Appellee,   *

          v.

Missouri Public Service Commission;
Jeff Davis; Connie Murray; Steve Gaw;
Robert M. Clayton III; Linward
Appling, in their official capacities as
commissioners of the Missouri Public
Service Commission and not as
individuals,

          Defendants - Appellants,

Big River Telephone Company, LLC;
Birch Telecom of Missouri, Inc.; Ionex
Communications, Inc.; NuVox
Communications of Missouri, Inc.;
Socket Telecom, LLC; XO
Communications Services, Inc.; XO
Missouri, Inc.; Xspedius Management
Co. of Kansas City, LLC; Xspedius
Management Co. Switched Serices,
LLC; Charter Fiberlink–Missouri, LLC;
Navigator Telecommunications, LLC;
Sprint Communications Company, L.P.;
WilTel Local Network, LLC; MCI
Communications Services, Inc.;
MCImetro, LLC,

          Defendants.

_____

No. 06-3727

_____

Southwestern Bell Telephone, L.P.,
doing business as SBC Missouri,

          Plaintiff - Appellant,

-3-

|                                                                                           |     |
|-------------------------------------------------------------------------------------------|-----|
|                                                                                           | *   |
| v.                                                                                        | *   |
|                                                                                           | *   |
| Missouri Public Service Commission;                                                       | *   |
| Jeff Davis; Connie Murray; Steve Gaw;                                                      | *   |
| Robert M. Clayton III; Linward                                                             | *   |
| Appling, in their official capacities as                                                  | *   |
| commissioners of the Missouri Public                                                      | *   |
| Service Commission and not as                                                             | *   |
| individuals; Big River Telephone                                                          | *   |
| Company, LLC,                                                                              | *   |
|                                                                                           | *   |
| Defendants - Appellees,                                                                    | *   |
|                                                                                           | *   |
| NuVox Communications of Missouri,                                                          | *   |
| Inc.; Socket Telecom, LLC; XO                                                              | *   |
| Communications Services, Inc.; XO                                                         | *   |
| Missouri, Inc.; Xspedius Management                                                       | *   |
| Co. of Kansas City, LLC; Xspedius                                                         | *   |
| Management Co. Switched Services,                                                          | *   |
| LLC,                                                                                       | *   |
|                                                                                           | *   |
| Defendants - Appellees,                                                                    | *   |
|                                                                                           | *   |
| Sprint Communications Company, L.P.,                                                       | *   |
|                                                                                           | *   |
| Defendant - Appellee,                                                                      | *   |
|                                                                                           | *   |
| Birch Telecom of Missouri, Inc; Ionex                                                      | *   |
| Communications, Inc.,                                                                      | *   |
|                                                                                           | *   |
| Defendants,                                                                                | *   |
|                                                                                           | *   |
| Charter Fiberlink–Missouri, LLC;                                                          | *   |
| Navigator Telecommunications, LLC,                                                         | *   |
|                                                                                           | *   |
| Defendants,                                                                                | *   |

```
                                          *
WilTel Local Network, LLC; MCI            *
Communications Services, Inc.;            *
MCImetro, LLC,                            *
                                          *
            Defendants.                   *
```

_____

Submitted: June 14, 2007
Filed: June 20, 2008

_____

Before BYE, RILEY, and BENTON,[1] Circuit Judges.

_____

BYE, Circuit Judge.

Southwestern Bell Telephone, L.P., d/b/a SBC Missouri (SBC), attempted to negotiate interconnection agreements with several competitors (Competing Local Exchange Carriers (CLEC)) as required by the Telecommunications Act of 1996, Pub. L. No. 104-104, 110 Stat. 56 (codified as amended in scattered sections of 47 U.S.C.). When those negotiations failed, the dispute was submitted to arbitration as provided for under the Act and the resulting arbitrator's decision was adopted by the Missouri Public Service Commission (MPSC). SBC petitioned the district court[2] for review, arguing the MPSC exceeded its authority by ordering SBC to allow CLECs broader access to its facilities network than mandated by the Act. SBC also argued the MPSC erred in ordering it to provide CLECs access to entrance facilities at cost. The district court found the MPSC exceeded its authority when it decided issues relating to which network facilities SBC was required to make available to CLECs. The district court

_____

[1]Judge Duane Benton recused himself from further participation in this case following oral argument and did not participate in the decision. Pursuant to 8th Cir. R. 47E, the two remaining judges on the panel have decided the case.

[2]The Honorable Charles A. Shaw, United States District Judge for the Eastern District of Missouri.

affirmed the MPSC's decision setting the rate SBC could charge CLECs for entrance facilities needed for interconnection. On appeal, the MPSC and various CLECs argue the district court erred in concluding the MPSC exceeded its authority. In its cross-appeal, SBC argues the district court erred in setting the rate it could charge for access to entrance facilities. We affirm.

I

For years, local telephone service was provided by companies holding monopolies which were subject to regulation by local governments. In passing the Telecommunications Act of 1996, Congress chose to encourage competition among telephone service providers and to impose greater federal regulation. The Act requires existing telephone companies, which previously held monopolies (Incumbent Local Exchange Carriers (ILEC)), to make their local facilities or networks available to newcomers – CLECs – for a fee, if the CLEC's ability to provide service was "impaired" without access. This appeal focuses on two sections of the Act which implemented these requirements – 47 U.S.C. §§ 251 and 271.

Under § 251, all ILECs are required to negotiate interconnection agreements with impaired CLECs and to lease certain of their network facilities at cost-based rates known as "total element long-run incremental cost" (TELRIC). If an agreement cannot be negotiated, the Act requires unresolved § 251 disputes be submitted to arbitration. Section 251 compliance, including the arbitration process, is subject to oversight by state public service commissions.

Prior to 2005, the Federal Communications Commission (FCC) took the position ILECs were required under § 251 to make all basic elements of their local networks (Unbundled Network Elements-Platform (UNE or UNE-Platform)) available to CLECs at TELRIC rates. Courts reviewing the FCC's orders, however, disagreed when the practice caused the competition pendulum to swing too far in favor of CLECs. See, e.g., AT&T Corp. v. Iowa Utils. Bd., 525 U.S. 366, 390 (1999) ("[I]f

Congress had wanted to give blanket access to incumbents' networks on a basis as unrestricted as the scheme the Commission has come up with . . . . It would simply have said . . . whatever requested element can be provided must be provided."); U.S. Telecom Ass'n v. FCC, 290 F.3d 415, 424 (D.C. Cir. 2002) ("If parties who have not shared the risks are able to come in as equal partners on the successes, and avoid payment for the losers, the incentive to invest plainly declines."); Verizon New England, Inc. v. Maine Pub. Utils. Comm'n, 509 F.3d 1, 9 (1st Cir. 2007) ("[M]aking a monopolist share . . . 'essential facilities' can promote competition; but it can also retard investment, handicap competition detrimentally, and discourage alternative means of achieving the same result that could conceivably enhance competition . . . ."). In 2005, the FCC issued its Triennial Review Remand Order (TRRO), which no longer required ILECs to make all elements of their local networks available under § 251 at TELRIC rates. See Order on Remand, In the Matter of Unbundled Access to Network Elements, Review of the Section 251 Unbundling Obligations of Incumbent Local Exchange Carriers, 20 F.C.C.R. 2533 (2005).

The TRRO also concluded CLECs were no longer impaired with respect to "entrance facilities" and ILECs were not required to provide such facilities as UNEs at TELRIC rates. An entrance facility is a connection between a switch maintained by an ILEC and a switch maintained by a CLEC. It is a means of transferring traffic from one carrier's network to another's, and facilitates an ILEC's obligation under the Act to interchange traffic among networks. CLECs also use entrance facilities to route customer traffic between a CLEC's customer and the CLEC's switch – a practice known as "backhauling." When used to transfer traffic from one network to another, entrance facilities are used for interconnection purposes. When used for backhauling, they are not used for interconnection. The TRRO found CLECs did not need entrance facilities for backhauling CLEC to CLEC traffic. Conversely, the TRRO reiterated that ILECs are required to provide entrance facilities at TELRIC rates under § 251(c)(2) if necessary for interconnection purposes.

In addition to § 251, which applies to all ILECs, § 271 imposes additional requirements on ILECs previously part of the Bell network (Bell Operating Companies (BOC)). Under § 271, BOCs wishing to enter the long-distance market must demonstrate they have, in addition to complying with § 251, made additional network facilities listed in a "competitive checklist" available to CLECs. Unlike § 251, the language of § 271 expressly states § 271 compliance is determined by the FCC.

Prior to 2005, § 271 compliance was not a contentious issue because the FCC's interpretation of § 251 required ILECs to provide § 271 network facilities as part of the § 251 agreements. It did not matter whether states had authority to force ILECs to comply with § 271, because they could order the same level of compliance by enforcing § 251. After the FCC issued its 2005 TRRO reducing the number of network facilities ILECs were required to make available, states and CLECs began exploring whether ILECs could be required to provide the same network facilities, i.e., the UNE-Platform, by enforcing the competitive checklist requirements of § 271. That brings us to the primary issue in this case – the authority of states to enforce § 271.

After the Act was passed, SBC negotiated § 251 agreements with various CLECs and complied with the additional requirements of § 271. As SBC and the CLECs were in the process of renegotiating their § 251 agreements, the FCC issued its 2005 TRRO reducing the number of network facilities ILECs were required to make available. As a result, SBC refused to offer its UNE-Platform, leading to an impasse in § 251 negotiations. SBC took the position it no longer had to offer the full UNE-Platform at TELRIC rates. The CLECs contended, even though the § 251 requirements had changed, SBC could be required to make the same network facilities available under § 271.

SBC and the CLECs were unable to reach an agreement and the dispute was submitted to arbitration. The arbitrator, while recognizing he had no authority under

§ 251 to order SBC to make the disputed network facilities available, ordered them to be provided under § 271. Despite language in § 271 granting the FCC exclusive authority over § 271 disputes, the arbitrator held the states have implied authority to ensure ILECs comply with § 271. The arbitrator also held SBC was required to make its entrance facilities available to CLECs for interconnection purposes at TELRIC rates. The MPSC adopted the arbitrator's order. SBC appealed to the district court arguing the MPSC exceeded its authority when it ordered SBC to provide the disputed network facilities under § 271.

The district court affirmed in part, and reversed in part. It held the MPSC exceeded its authority by ordering the disputed network facilities provided under § 271, but affirmed the MPSC's decision setting the rate SBC could charge for entrance facilities needed for interconnection. On appeal, the MPSC and CLECs argue the structure of the Act implies Congress granted the states implicit authority to enforce § 271. SBC argues the FCC – not the states – has sole authority to enforce § 271. In its cross-appeal, SBC argues the Act no longer requires it to make entrance facilities available at TELRIC rates. Alternatively, assuming it must provide access for interconnection purposes, SBC argues the MPSC erred in finding the CLECs were using the entrance facilities for interconnection, and not backhauling.

II

We review the MPSC's interpretation and application of federal law de novo and will set aside its findings of fact only if they are arbitrary and capricious. WWC License, L.L.C. v. Boyle, 459 F.3d 880, 889-90 (8th Cir. 2006). The parties agree this appeal involves the interpretation and application of federal law and de novo review applies.

The MPSC and CLECs concede the states have no authority to enforce § 271. Nonetheless, they contend Congress granted implicit authority by virtue of how the Act is structured. They argue the Act requires ILECs to enter into § 251 agreements

with CLECs and those agreements are subject to mandatory state approval. They further argue ILECs seeking § 271 approval must, as a precondition, demonstrate they have obtained state approval of their § 251 agreements. Thus, a state can defeat an ILEC's attempt to win § 271 approval by withholding § 251 approval. They contend this ability to hamstring an ILEC's attempt to obtain § 271 approval means Congress intended to grant the states implicit authority to enforce § 271.

> Sections 251-52 provide for a dual federal-state regime: the FCC determines what UNE elements must be provided and sets pricing policy; state commissions oversee the adoption of agreements . . . providing such UNEs to competitors at prices based on those principles. 47 U.S.C. § 252(a), (b), (e), (f). Disputes as to the adoption of the agreements submitted to state commissions go to federal, rather than state, court for review, id. § 252(e), although implementation issues may arise in state proceedings. In short, the states have a major role under these sections.

Verizon New England, Inc., 509 F.3d at 7.

Conversely, the plain language of § 271 makes clear states have no authority to interpret or enforce the obligations of § 271. Section 271 contemplates two administrative determinations and Congress assigned both to the FCC. First, a BOC seeking § 271 approval must "apply to the Commission" – the FCC – and "the Commission" "shall issue a written determination approving or denying the authorization requested" after "[t]he Commission" determines whether the specified criteria, including the competitive checklist, are satisfied. § 271(d)(1), (3); 271(c)(2)(B).

Second, the FCC must address any enforcement issues. "The Commission shall establish procedures for the review of complaints" alleging a BOC is not complying with § 271; "the Commission shall act on such [a] complaint within 90 days"; and "the Commission may" take action to enforce the requirements of § 271 if "the

Commission determines" a BOC is not in compliance with its obligations under § 271. § 271(d)(6).

Unlike the authority granted states under § 251, Congress only gave states an advisory role at the application stage of the § 271 process. The FCC is to "consult with the State commission of any State that is the subject of" a § 271 application before the FCC rules on the application. § 271(d)(2)(B). The FCC need not "give the State commissions' views any particular weight." SBC Commc'ns Inc. v. FCC, 138 F.3d 410, 416 (D.C. Cir. 1998). Moreover, Congress did not grant states even an advisory role in addressing post-approval compliance issues. § 271(d)(6). "[A]ny complaint by [a CLEC] that [a BOC's] failure to provide [a certain form of network access] will violate § 271 is an issue for the FCC, not for [a state commission]." Dieca Commc'ns, Inc. v. Florida Pub. Serv. Comm'n, 447 F. Supp. 2d 1281, 1286 (N.D. Fla. 2006); see BellSouth Telecomms., Inc. v. Mississippi Pub. Serv. Comm'n, 368 F. Supp. 2d 557, 566 (S.D. Miss. 2005). A state's role under § 271 is "limited" to "issuing a recommendation" regarding a § 271 application, and a state commission may not "parlay [its] limited role" into the authority to impose substantive requirements exclusively the prerogative of the FCC. Indiana Bell Tel. Co. v. Indiana Util. Regulatory Comm'n, 359 F.3d 493, 497 (7th Cir. 2004).

"The contrast [between the language in §§ 251, 252, and 271] confirms that when Congress envisaged state commission power to implement the statute, it knew how to provide for it." Verizon New England, Inc., 509 F.3d at 7. Accordingly, we join those federal courts which have concluded the FCC has exclusive jurisdiction over § 271. See, e.g., Id. at 7-8 (noting the majority of federal courts and state public service commissions treat § 271 as within the exclusive authority of the FCC); Indiana Bell Tel. Co., 359 F.3d at 495 ("The Act reserves to the FCC the authority to decide whether to grant a section 271 application.").

-11-

In its cross-appeal, SBC argues the district court erred in affirming the MPSC's order holding CLECs are entitled to access SBC's entrance facilities for interconnection purposes at TELRIC rates. SBC argues the order conflicts with FCC rulings holding CLECs are no longer impaired with respect to entrance facilities and not entitled to them as UNEs.

The MPSC acknowledged the FCC's ruling stating CLECs are not entitled to entrance facilities as UNEs, but required SBC to allow access pursuant to § 251(c)(2), which requires ILECs to provide interconnection to CLECs. The District Court concluded the MPSC's order correctly implemented the FCC's rulings. Further, it rejected SBC's argument the FCC only requires an ILEC to allow CLECs to interconnect with its network but does not require it to lease the interconnection facilities themselves.

The FCC has held CLECs are not impaired without access to entrance facilities and are not entitled to entrance facilities as UNEs under § 251(c)(3). The FCC's finding of non-impairment does not, however, alter the right of CLECs to obtain interconnection facilities pursuant to § 251(c)(2) for transmission and routing of telephone exchange service and exchange access service, i.e., CLEC to ILEC and ILEC to CLEC traffic. The FCC determined when a CLEC uses entrance facilities to carry traffic to and from its own end users, i.e., backhauling or CLEC to CLEC, the CLEC is not entitled to obtain entrance facilities as UNEs at TELRIC rates. If a CLEC needs entrance facilities to interconnect with an ILEC's network, it has the right to obtain such facilities from the ILEC. Thus, CLECs must be provided access at TELRIC rates if necessary to interconnect with the ILEC's network. See Illinois Bell Tel. Co. v. Box, Nos. 07-3557, 07-3683, 2008 WL 2151573, at 2-3 (7th Cir. May 23, 2008).

Additionally, "interconnection" means the physical linking of two networks for the mutual exchange of traffic. The term "interconnect" refers to "'facilities and equipment,' not to the provision of any service." AT&T Corp. v. FCC, 317 F.3d 227, 234-35 (D.C. Cir. 2003) (interpreting the term interconnect in § 251(a)(1)); see Competitive Telecomms Ass'n v. FCC, 117 F.3d 1068, 1072 (8th Cir. 1997) (stating interconnection as used in § 251(c)(2) means "a physical link between the equipment of the carrier seeking interconnection and the LEC's network.").

The MPSC found, and the district court agreed, the entrance facilities requested by the CLECs would be used solely for interconnection purposes within the meaning of § 251(c)(2). Nothing in the record suggests the finding was arbitrary or capricious. Further, the district court correctly concluded SBC was required to provide a physical link to CLECs for access to its entrance facilities as necessary for interconnection at TELRIC rates.

## IV

The judgment of the district court is affirmed.

_____