# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-3548

_____

Firstcom, Inc.,
a Minnesota Corporation,

       Appellant,

v.

Qwest Corporation,
a Colorado Corporation,

       Appellee.

\*
\*
\*
\*
\*   Appeal from the United States
\*   District Court for the
\*   District of Minnesota.
\*
\*
\*
\*

_____

Submitted: June 9, 2008
Filed: February 9, 2009

_____

Before MURPHY, BYE, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Firstcom, Inc. ("Firstcom") appeals the district court's[1] order dismissing all of its claims against Qwest Corporation ("Qwest"). We affirm.

_____

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota, adopting the report and recommendation of the Honorable Susan Richard Nelson, United States Magistrate Judge for the District of Minnesota.

I.

Firstcom and Qwest, both providers of telecommunications services, were competitors within Minnesota. "The telecommunications industry is regulated by Chapter 5 of the Federal Communications Act of 1934, as amended by the Telecommunications Act of 1996, codified at 47 U.S.C. § 151 *et seq.*" (the "Act"). TON Servs., Inc. v. Qwest Corp., 493 F.3d 1225, 1229 (10th Cir. 2007). Prior to the amendments, "local telephone service was provided by companies holding monopolies which were subject to regulation by local governments," but, in enacting the 1996 amendments, "Congress chose to encourage competition among telephone service providers and to impose greater federal regulation." Sw. Bell Tel., L.P. v. Mo. Pub. Serv. Comm'n, 530 F.3d 676, 680 (8th Cir. 2008). In addition, the Minnesota Telecommunications Act of 1996 ("MTA"), Minn. Stat. § 237.01 *et seq.*, facilitates "competitive entry into the local telephone market." US West Commc'ns, Inc. v. Minn. Pub. Util. Comm'n, 55 F. Supp.2d 968, 974 (D. Minn. 1999).

The Act categorizes telecommunications carriers and, depending on the classification, imposes duties. Pursuant to the Act, Firstcom and Qwest are both local exchange carriers ("LECs"), of which there are two types: (1) incumbent local exchange carriers ("ILECs"), and (2) competitive local exchange carriers ("CLECs").[2] Qwest is an ILEC, and Firstcom is a CLEC. The Act requires that Qwest, as an ILEC, "provide access to its network to [Firstcom, a CLEC] through interconnection agreements," and, in exchange, Qwest is "allowed to charge reasonable and nondiscriminatory rates for this access." Quick Commc'ns, Inc. v. Mich. Bell Tel. Co., 515 F.3d 581, 583 (6th Cir. 2008); see 47 U.S.C. § 252(d). Pursuant to the Act, interconnection agreements must "be submitted for approval to the State commission,"

---

[2]ILECs are "existing telephone companies, which previously held monopolies," Sw. Bell Tel., L.P. v. Mo. Pub. Serv. Comm'n, 530 F.3d 676, 680 (8th Cir. 2008); see 47 U.S.C. § 251(h), whereas CLECs are "newcomers," Sw. Bell Tel., L.P., 530 F.3d at 680.

47 U.S.C. § 252(e)(1), which, in Minnesota, is the Minnesota Public Utilities Commission ("MPUC"), see Minn. Stat. § 237.02.

Firstcom and Qwest entered into interconnection agreements. Under those agreements, Qwest sold telephone services to Firstcom. Firstcom did not remain profitable and ceased its normal business operations in 2001. At that time, Al Jaffe & Associates ("AJA") purchased all or substantially all of Firstcom's assets. In 2002, Firstcom formally dissolved. AJA later assumed the Firstcom name.

In 2004, twelve shareholders of the original Firstcom filed an action against Qwest, alleging violations of the Act and the MTA as well as Minnesota common law claims of negligence, promissory estoppel, and fraudulent misrepresentation. The action related to "secret" interconnection agreements between Qwest and two CLECs, Eschelon Telecom ("Eschelon") and McLeod USA Telecommunications ("McLeod").[3] Specifically, the plaintiffs alleged that Qwest provided Eschelon and McLeod with voicemail services and a greater level of customer service relative to billing, despite Qwest's representations to Firstcom that this was not the case. The plaintiffs further asserted that, as a result of Qwest's wrongful conduct, the original

---

[3]The "secret" interconnection agreements between Qwest and Eschelon and McLeod were also the subject of a regulatory action filed on February 14, 2002, by the Minnesota Department of Commerce. See Qwest Corp., No. P-421/C-02-197, 2007 WL 4976248, at *1 (Minn. Pub. Utils. Comm'n Dec. 26, 2007). Pursuant to Minnesota statute section 237.462, the Minnesota Department of Commerce filed a complaint against Qwest, alleging that it had violated provisions of the Act and the MTA by failing to file twelve interconnection agreements it had with McLeod and Eschelon. Id. Eventually, Qwest entered into a settlement agreement with ten CLECs, in which Qwest agreed to pay a fine of $6,500,000 and "make compensatory payments to any CLEC who was purchasing wholesale services from Qwest while the unfiled agreements were in effect" to "be based on the most favorable discount terms found in the unfiled agreements . . . ." Id. at *3. The Commission approved the settlement agreement. Id. at *8. The record is silent as to whether Firstcom was eligible for or sought such recovery.

Firstcom was unable to continue its business. On September 18, 2006, the district court granted Qwest's motion for summary judgment as the shareholders lacked standing because AJA had purchased the original Firstcom's legal rights. See Firstcom, Inc. v. Qwest Corp., No. 04-995, 2006 WL 2666301, at *5-6 (D. Minn. Sept. 18, 2006). The shareholders did not appeal.

On November 21, 2006, AJA, under the name of Firstcom,[4] brought this action against Qwest asserting the same claims as the 2004 lawsuit and adding a claim of negligence. Qwest moved to dismiss the action, and the district court granted the motion. As to Firstcom's federal claim, the district court found that the claim was time-barred and that equitable tolling did not apply. The district court determined that, even assuming the MTA granted a private cause of action, Firstcom could not pursue it because the MTA expired three months before this action was filed. Finally, the district court found that Firstcom's alleged state law claims were preempted by the Act. Firstcom brings this appeal.

II.

Firstcom contends that the district court erred because none of its claims were properly dismissed. We review the district court's grant of Qwest's motion to dismiss de novo. See Owen v. Gen. Motors Corp., 533 F.3d 913, 918 (8th Cir. 2008).

A.

Firstcom contends the district court improperly dismissed its federal claim because: (1) the longer four-year limitations period in 28 U.S.C. § 1658(a), rather than the two-year limitations period in section 415 of the Act, applies so that the claim is timely; (2) even if section 415 applies, the claim is timely under the doctrine of

_____

[4]AJA will be referred to as "Firstcom" in the remainder of this opinion.

equitable tolling. Firstcom asserts that the claim was tolled until September 2006, when it first learned that it had a cause of action against Qwest via the district court's dismissal of the shareholders' suit for lack of standing. Firstcom further asserts that equitable tolling applies here because the interests that statutes of limitations seek to protect have been afforded to Qwest as it received timely notice of the claim when it was asserted in 2004 in the shareholders' lawsuit.

We find unpersuasive Firstcom's argument that the four-year limitations period in 28 U.S.C. § 1658(a) applies to its claim under the Act. Section 1658(a) provides that "*[e]xcept as otherwise provided by law*, a civil action arising under an Act of Congress . . . may not be commenced later than 4 years after the cause of action accrues." 28 U.S.C. § 1658(a) (emphasis added). "Section 1658(a) is a 'fallback' provision that applies only where no specific statute of limitations governs the particular claim at issue." Am. Cellular Corp. & Dobson Cellular Sys., 22 F.C.C.R. 1083, 1089 (2007); see N. Star Steel Co. v. Thomas, 515 U.S. 29, 34 n.* (1995) (describing section 1658 as a "general, 4-year limitations period for any federal statute [enacted after Dec. 1, 1990] without one of its own"); Campbell v. Amtrak, 163 F. Supp. 2d 19, 22 (D.D.C. 2001) (characterizing section 1658 as the "federal default statute of limitations").

Section 415(b) of the Act mandates a two-year limitations period for "[a]ll complaints against carriers for the recovery of damages . . . ." 47 U.S.C. § 415(b). Because Firstcom's claim for damages under the Act is specifically governed by the limitations period set forth in section 415(b) of the Act, section 1658(a) has no application here. See Am. Cellular Corp., 22 F.C.C.R. at 1088 (holding that section 415 provided a two-year limitation on "[a]ll complaints against carriers for the recovery of damages" under the Act); see also AT & T Commc'ns of the Mountain States, Inc. v. Qwest Corp., No. 2:06CV00783DS, 2007 WL 1342657, at *1 (D. Utah May 4, 2007) (unpublished) (holding that a damages claim under the Act is subject to two-year limitations period); AT & T Commc'n of the Midwest v. Qwest Corp.,

No. 8:06CV625, 2007 WL 2743491, at **2-3 (D. Neb. Feb. 27, 2007) (unpublished) (same).  Thus, the two-year limitations period of section 415(b) governs Firstcom's federal claim.  According to Firstcom's complaint, Qwest's alleged wrongful conduct occurred no later than 2002, more than two years prior the filing of the complaint in 2006.

However, Firstcom also contends that its claim is rendered timely by the doctrine of equitable tolling.  We review de novo the district court's determination that equitable tolling is inapplicable to the statute of limitations here.  See E.J.R.E. v. United States, 453 F.3d 1094, 1098 (8th Cir. 2006).  "The doctrine of equitable tolling permits a plaintiff to sue after the statutory time period has expired if he has been prevented from doing so due to inequitable circumstances."  Pecoraro v. Diocese of Rapid City, 435 F.3d 870, 875 (8th Cir. 2006) (quotation omitted).  "Because statutes of limitations protect important interests of certainty, accuracy, and repose, equitable tolling is an exception to the rule, and should therefore be used only in exceptional circumstances."  Motley v. United States, 295 F.3d 820, 824 (8th Cir. 2002) (quotation omitted); see Riddle v. Kemna, 523 F.3d 850, 857 (8th Cir. 2008) ("Equitable tolling is an exceedingly narrow window of relief." (quotation omitted)); Pecoraro, 435 F.3d at 875 ("Courts generally require strict compliance with a statute of limitations and rarely invoke doctrines such as equitable tolling to alleviate a plaintiff from a loss of his right to assert a claim.").

Firstcom, as "[t]he party . . . claiming the benefit of an exception to the operation of a statute of limitations[,] bears the burden of showing that [it] is entitled to [equitable tolling]."  Motley, 295 U.S. at 824.  This generally involves "establishing two elements:  (1) that [it] has been pursuing [its] rights diligently, and (2) that some extraordinary circumstance stood in [its] way."  Riddle, 523 F.3d at 857 (quoting Walker v. Norris, 436 F.3d 1026, 1032 (8th Cir. 2006)).  According to Firstcom's complaint, "[b]eginning in the fall and winter of 2002 representatives of Firstcom first became aware of . . . improper, illegal, and anti-competitive conduct by Qwest in

relation to its business dealings with CLECs generally, and Firstcom specifically." Compl. ¶ 23. In 2004, shareholders of the former Firstcom brought suit alleging the same wrongdoing challenged here. Firstcom argues that equitable tolling applies because it did not learn that it possessed legal rights which had been violated by Qwest until September 2006, when the district court dismissed the shareholders' suit for lack of standing. However, Firstcom's argument merely demonstrates that its delay in bringing this action is attributable to its own actions. Firstcom was a party to, and in possession of, the asset purchase agreement, and the fact that Firstcom did not (for whatever reason) understand its rights under that agreement does not warrant the application of equitable tolling. See Tucker v. Kingston, 538 F.3d 732, 735 (7th Cir. 2008) ("[S]tanding alone, the lack of legal expertise is not a basis for invoking equitable tolling."). Further, it demonstrates that the circumstances that prevented Firstcom from filing the Act claim were not "truly beyond the control of [Firstcom] . . . ." See Pecoraro, 435 F.3d at 875 (quotation omitted). Accordingly, the doctrine of equitable tolling does not apply. Because Firstcom's federal claim was not timely filed, it was properly dismissed.

## B.

Firstcom also alleges that Qwest violated the MTA. Specifically, Firstcom alleges that "Qwest willfully and intentionally violated Firstcom's rights to receive the same contractual terms as those provided by Qwest to Firstcom's competitors as said rights are guaranteed by the [MTA]." Compl. ¶ 39. Firstcom further contends that section 237.462(11) of the MTA gives rise to a private cause of action, expressly and impliedly.

Subdivision 11 of section 237.462, entitled "Private Remedies," provided that: "Nothing in this section affects the ability of a telephone company, telecommunications provider, telecommunications carrier, or subscriber to bring a private cause of action in court against a provider of local exchange telephone service

based on conduct for which a penalty is imposed under this section." Minn. Stat. § 237.462(11). However, subdivision 11 of section 237.462 expired, in its entirety, on August 1, 2006, more than three months before Firstcom filed its complaint. Therefore, under Minnesota law, subdivision 11 cannot provide the basis for Firstcom's cause of action. See Granville v. Minneapolis Pub. Schs., Special Sch. Dist. No. 1, 732 N.W.2d 201, 207 (Minn. 2007) (providing that a statute had permanently expired where "[t]he legislature allowed that section to expire and made no provision for revival"); State ex rel. Bennett v. Brown, 12 N.W.2d 180, 181 (Minn. 1943) (stating that the repeal of a statute upon which a cause of action is based moots the action).

Further, section 237.461 entitled "Enforcement" remains in effect. See Minn. Stat. § 237.461. Section 237.461 provides for an "action to recover civil penalties," id. § 237.461(1); however, it specifically states that "[t]he civil penalties provided for in [section 237.461] may be recovered by a civil action brought by the attorney general in the name of the state. Amounts recovered under this section must be paid into the state treasury," id. § 237.461(4). The expiration of subdivision 11 of section 237.462 coupled with the continued vitality of section 237.461 demonstrates that Firstcom cannot bring a private cause action against Qwest pursuant to the MTA.

Firstcom acknowledges the expiration of subdivision 11 but then argues that it is irrelevant because it was in force at the time of both Qwest's allegedly wrongful conduct and the shareholders' suit. However, Firstcom has offered no authority for its position, and we find none. On the contrary, "expiration," in the context of a statute, means "coming to an end; esp[ecially], a formal termination on a closing date," Black's Law Dictionary 619 (8th ed. 2004), similar to "repeal," meaning "abrogation of an existing law by legislative act," id. at 1325. "It is well established that when a statute is repealed or otherwise becomes inoperative no further enforcement proceedings can take place unless 'competent authority" has kept the statute alive for that purpose." United States v. Van Den Berg, 5 F.3d 439, 441 (9th

Cir. 1993) (quoting Pipefitters Local Union No. 562 v. United States, 407 U.S. 385, 432 (1972)); see Simpson v. Miller, 93 F.R.D. 540, 544 n.6 (N.D. Ill. 1982) ("[W]hen a statute is repealed, claims for declaratory and injunctive relief against continued adherence to the statute are rendered moot."). Firstcom has offered no "competent authority" that "enforcement proceedings" pursuant to subdivision 11, such as Firstcom's MTA claim in this case, "can take place" after the expiration of subdivision 11. See Van Den Berg, 5 F.3d at 441. Therefore, Firstcom's MTA claim fails and was properly dismissed.

## C.

Firstcom asserts that the district court erred in determining that its promissory estoppel, fraudulent misrepresentation, and negligence claims were dependent on the Act and thus preempted by federal law. Firstcom contends that these claims rest on Minnesota law and that they are timely under the six-year limitation period for such actions under Minnesota law. See Minn. Stat. § 541.05.1(1), (5)-(6). Firstcom also claims that the filed rate doctrine is inapplicable as its claims do not challenge Qwest's rates.[5]

We determine whether Firstcom's state common law claims are preempted by the Act based on a reading of the complaint, i.e. ordinary preemption. See Stuart Weitzman, LLC v. Microcomputer Res., Inc., 542 F.3d 859, 864 n.4 (11th Cir. 2008) ("'[O]rdinary preemption' provid[es] a substantive defense to a state law action on the

-------

[5]The district court did not address this issue; however, the magistrate judge relied on the filed rate doctrine as an alternative basis for recommending the dismissal of Firstcom's state law claims.

basis of federal law.").[6] In order to make this determination, we first outline the contours of sections 251 and 252.

Section 251 of the Act imposes duties on telecommunications carriers, sometimes varying according to the specific type of carrier. Section 251 obligates: (1) all telecommunications carriers (both Firstcom and Qwest) to "interconnect directly or indirectly with facilities and equipment of other telecommunications carriers," 47 U.S.C. § 251(a)(1); (2) all local exchange carriers (both Firstcom and Qwest) to resell telecommunications services without "unreasonable or discriminatory conditions or limitations," id. § 251(b)(1); (3) all ILECs (Qwest) to negotiate interconnection agreements in good faith with CLECs (Firstcom), id. § 251(c)(1); and (4) all ILECs (Qwest) to provide interconnection on rates, terms, and conditions that are nondiscriminatory, id. § 251(c)(2)(D).

"[Section 252(a)(1)] allows the ILEC 'to negotiate and enter into a binding agreement with the new entrant to fulfill the duties imposed by §[] 251(b) and (c) . . . .'" Qwest Corp. v. Pub. Utils. Comm'n of Colo., 479 F.3d 1184, 1188 (10th Cir. 2007) (quoting Verizon Md., Inc. v. Pub. Serv. Comm'n of Md., 535 U.S. 635, 638-39 (2002)). Once an interconnection agreement has been adopted, it must "be submitted

_____

[6]Ordinary preemption is distinct from complete preemption which "is a jurisdictional doctrine," New Orleans & Gulf Coast Ry. Co. v. Barrois, 533 F.3d 321, 331 (5th Cir. 2008) (citation and quotation omitted), that applies where "[t]he federal preemptive power [is] complete . . . ." Stuart Weitzman, LLC v. Microcomputer Res., Inc., 542 F.3d 859, 864 n.4 (11th Cir. 2008). "The Supreme Court has found complete preemption in only three classes of cases: Section 301 of the Labor Management Relations Act of 1947 (LMRA), 29 U.S.C. § 185; the Employee Retirement Income Security Act of 1975 (ERISA), 29 U.S.C. §§ 1001-1461; and the National Bank Act, 12 U.S.C. § 38." Mikulski v. Centerior Energy Corp., 501 F.3d 555, 563-64 (6th Cir. 2007). It is well settled that the Telecommunications Act "does not completely preempt state-law causes of action." Premiere Network Servs., Inc. v. SBC Commc'ns, Inc., 440 F.3d 683, 692 n.11 (5th Cir. 2006).

for approval" to the state commission, 47 U.S.C. § 252(e)(1), here the MPUC, and the MPUC must make all approved agreements available to the public, see id. § 252(h). Pursuant to section 252(i), local exchange carriers (both Firstcom and Qwest) must "make available any interconnection, service, or network element provided under an agreement approved under this section to which it is a party to any other requesting telecommunications carrier upon the same terms and conditions as those provided in the agreement." Id. § 252(i).

The Act provides: "Nothing in [chapter 5 of title 47] . . . shall in any way abridge or alter the remedies *now existing at common law or by statute*, but the provisions of this chapter are in addition to such remedies." 47 U.S.C. § 414 (emphasis added). Therefore, section 414 "merely preserves *existing* state-law remedies" and does not create state law remedies for breaches of duties imposed by the Act. Premiere Network Servs., Inc. v. SBC Commc'ns, Inc., 440 F.3d 683, 692 n.12 (5th Cir. 2006) (emphasis added); see MCI Telecomms. Corp. v. Garden State Inv. Corp., 981 F.2d 385, 387 (8th Cir. 1992) ("Section 414 preserves causes of action for breaches of duties that are *not* created under the Communications Act." (emphasis added)); Comtronics, Inc. v. Puerto Rico Tel. Co., 553 F.2d 701, 708 n.6 (1st Cir. 1977) ("The 'existing' remedies Congress had in mind under [section] 414 would scarcely be remedies so closely dependent upon the Act itself; rather, we read [section] 414 as preserving causes of action for breaches of duties distinguishable from those created under the Act . . . ."). Accordingly, if Firstcom's purported state law claims, in actuality, seek recovery for Qwest's alleged breach of duties imposed by sections 251 and 252 of the Act, then Firstcom's recourse was to bring claims pursuant to the Act, not Minnesota common law. See 47 U.S.C. § 414; Premiere, 440 F.3d at 692 n.12; MCI Telecomms., 981 F.2d at 387; Comtronics, 553 F.2d at 708 n.6.

With respect to Firstcom's negligence claim, Firstcom alleges that:

> Qwest owed Firstcom a duty of care to abide by applicable Federal and state telecommunications laws, to refrain form [sic] discriminating against Firstcom relative to other CLECs, and to refrain from acting in [a] wrongful and deceitful manner which placed Firstcom in a position of competitive disadvantage relative to Qwest and other CLECs. [] Based upon the facts identified herein, and with deliberate disregard for the rights of Plaintiff, on numerous occasions Qwest negligently breached its duty of care to Firstcom.

Compl. ¶¶ 53-54. Because Firstcom's negligence claim is seeking recovery for breach of a duty imposed by the Act, the claim is preempted. See 47 U.S.C. § 414; Premiere, 440 F.3d at 692 n.12; MCI Telecomm'ns Corp., 981 F.2d at 387; Comtronics, 553 F.2d at 708 n.6.

In terms of promissory estoppel, Firstcom alleges that:

> Qwest assured Firstcom that Firstcom's competitors would not, and did not, receive preferential contract terms relative to the interconnection agreements between the parties . . . . [] By such promises Qwest intended, and should have reasonably expected, to induce Firstcom to rely upon those promises. Firstcom reasonably relied to its detriment upon the promises of Qwest by expending funds in an effort to further its business interests and by adopting business and marketing strategies consistent with Firstcom's belief that . . . it accurately and fully understood the prices paid for services by competitors . . . and . . . no CLEC possessed a competitive advantage pursuant to preferred contractual terms with Qwest.

Compl. ¶¶ 42-44.[7]  Had Qwest remained silent, the behavior complained of could amount only to a violation of the Act; however, Qwest's alleged conduct here, if true, amounts to a violation of Minnesota common law, regardless of the Act.  Thus, the promissory estoppel claim is not preempted by the Act.

With regard to Firstcom's fraud claim, Firstcom alleges that:

> [O]n numerous occasions Qwest willfully and intentionally made fraudulent misrepresentations of material fact to Firstcom . . . that Firstcom's competitors did not and would not receive preferential contractual terms relative to the interconnection agreements the parties entered into.  At the time of said fraudulent misrepresentations, . . . Qwest knew that various competitors had received and would receive preferential interconnection contract terms from Qwest which were not made available to Firstcom . . . and which placed Firstcom at a competitive disadvantage.  These preferential terms related to, among other things, substantial secret discounts . . . , support services . . . , and the availability of voicemail service, DSL and other services . . . . []  Qwest knew at the time it communicated its fraudulent misrepresentations to Firstcom that said communications were false and that Firstcom's competitors were, in fact, provided preferential interconnection contract terms . . . . []  Qwest intended its misrepresentations to induce Firstcom to cease its demands for UNE-P, DSL, other services and better pricing terms, to enter into a UNE-P contract with Qwest . . . .  Such misrepresentations did induce such action by Firstcom until it was forced from business.

Complaint ¶¶ 47-50.[8]  Firstcom's fraud claim is not premised merely on a violation of the Act.  Rather, it asserts that Qwest made affirmative misrepesentations aside

[7]"The competitors of Firstcom that received the benefit of preferential . . . terms, including voicemail services, customer services, and greater price discounts, included McLeod and Eschelon."  Appellant's Br. 12.

[8] Unbundled Network Element" is also known as "UNE-P."

-13-

from failing to comply with the Act. Assuming that the Act did not exist, Qwest would not be permitted to engage in the fraudulent conduct alleged here. Thus, the wrong alleged by Firstcom was not created by the Act. Furthermore, the Second Circuit determined that the Act "does not manifest a clear Congressional intent to preempt state law actions prohibiting . . . common law fraud . . . ." Marcus v. AT&T Corp., 138 F.3d 46, 54 (2d Cir.1998); see 47 U.S.C. § 414. Accordingly, Firstcom's fraud claim was not preempted by the Act.

However, another potential bar to Firstcom's promissory estoppel and fraud claims must be considered: the filed rate doctrine.

> The filed rate doctrine "forbids a regulated entity [from charging] rates for its services other than those properly filed with the appropriate federal regulatory authority." The filed rate doctrine prohibits a party from recovering damages measured by comparing the filed rate and the rate that might have been approved absent the conduct in issue.

H.J. Inc. v. Nw. Bell Tel. Co., 954 F.2d 485, 488 (8th Cir. 1992) (quoting Ark. La. Gas Co. v. Hall, 453 U.S. 571, 577 (1981)). Rather than tariffs filed with the FCC, the filed rates at issue here are contained in the interconnection agreements executed by Firstcom and Qwest and approved by the MPUC. See 47 U.S.C. § 252(e)(1) (providing that state commissions are the regulatory bodies with and by which interconnection agreements must be filed and approved); Verizon Del., Inc. v. Covad Commc'ns Co., 377 F.3d 1081, 1089 (9th Cir. 2004) ("The tariffs that are filed are not filed federally but with state agencies."). We have determined that the filed rate doctrine applies to rates filed with state agencies. See H.J. Inc., 954 F.2d at 494; see also Wegoland Ltd. v. NYNEX Corp., 27 F.3d 17, 20 (2d Cir. 1994) ("[C]ourts have uniformly held, and we agree, that the rationales underlying the filed rate doctrine apply equally strongly to regulation by state agencies.").

The filed rate doctrine applies "even if a carrier intentionally misrepresents its rate and a customer relies on the misrepresentation . . . ." AT&T Co. v. Cent. Office Tel., Inc., 524 U.S. 214, 222 (1998); see AT&T Corp. V. JMC Telecom, LLC, 470 F.3d 525, 534 n.13 (3d Cir. 2006) ("In so much as this is a claim for fraud, the allegation is also barred by the filed rate doctrine."); Dreamscape Design, Inc. v. Affinity Network, Inc., 414 F.3d 665, 669 (7th Cir. 2005) ("Under the filed tariff doctrine, courts may not award relief (whether in the form of damages or restitution) that would have the effect of imposing any rate other than that reflected in the filed tariff. This is so even if a carrier intentionally misrepresents its rate and a customer relies on the misrepresentation." (citation omitted)); Wegoland, 27 F.3d at 22 ("[B]ecause a fraud exception to the filed rate doctrine is both contrary to guiding Supreme Court precedent and important regulatory policies, we hold that there is no fraud exception to the filed rate doctrine that would save this suit from dismissal."). Although the Ninth Circuit recently held that the filed rate doctrine did not preclude a fraud claim provided that the damages could be proved without attacking the filed rate, see In re NOS Commc'ns, MDL No. 1357, 495 F.3d 1052, 1060 (9th Cir. 2007), we are persuaded by the statement of an earlier Ninth Circuit panel that:

> It is tempting to believe that, in Congress's new perspective [embodied in the 1996 amendments to the Act introducing a competitive regime for local telecommunications services] a suit for fraud of the kind before us should be allowed to proceed. The Supreme Court has declared that an exception for affirmative fraud has never been rejected by that court. Still, . . . such an exception has never been recognized. If a breach of this size is to be made in a filed tariff it is within the province of the Supreme Court to make it.

Verizon, 377 F.3d at 1089 (citation omitted) (citing Ark. La. Gas Co., 453 U.S. at 583 n.13). As the Supreme Court has not done so, and instead has reaffirmed the filed rate doctrine in the post-1996 amendments context, see Cent. Office, 524 U.S. at 227 ("[t]he rights as defined by the tariff cannot be varied or enlarged by either contract or tort"), we are bound to follow it. See Goldwasser v. Ameritech Corp., 222 F.3d

390, 402 (7th Cir. 2000); see also Verizon, 377 F.3d at 1089 ("Congress and the FCC have left [interconnection agreements] to be ruled by tariffs.").

Firstcom's promissory estoppel and fraud claims are premised on the assertion that Qwest should have provided voicemail service, a greater level of customer service, and a great price discount to Firstcom. The filed rate doctrine prohibits a regulated entity from charging any rate other than that filed with the relevant regulatory authority, here the MPUC. See Ark. La. Gas, 453 U.S. at 577; H.J. Inc., 954 F.2d at 488; see also Verizon, 377 F.3d at 1087 ("[A]ll of the published cases addressing the filed rate doctrine hold unequivocally that no one may bring a judicial proceeding to enforce any rate other than the rate established by the filed tariff." (quotation omitted)); Fax Telecomms. Inc. v. AT&T, 138 F.3d 479, 482 (2d Cir. 1998) ("Carriers are prohibited from providing communications services except pursuant to a filed tariff, and may not charge, demand, collect or receive a rate other than the rate listed in the applicable tariff."). Thus, to the extent Firstcom seeks recovery for a price discount it was allegedly entitled to, its claims are barred by the filed rate doctrine.

The doctrine similarly bars Firstcom's claims insofar as they allege that Qwest should have provided additional telecommunications services not covered by the interconnection agreements. The Supreme Court has held that state contract and tort claims seeking services contrary to a filed tariff are barred by the filed rate doctrine. See Cent. Office, 524 U.S. at 222; see also JMC Telecom, 470 F.3d at 532 ("Here, JMC is claiming poor customer service in areas, such as customer support, that are not spelled out in the tariff. As such, JMC's claims of poor service are barred by the filed rate doctrine."); Brown v. MCI WorldCom Network Servs., Inc., 277 F.3d 1166, 1170 (9th Cir. 2002) ("In addition to barring suits challenging filed rates and suits seeking to enforce rates that differ from the [common carrier's] filed rates, the filed-rate doctrine also bars suits challenging services, billing, or other practices when such challenges, if successful, would have the effect of changing the filed tariff."). The

services that Firstcom claims it was entitled to were not covered by the parties' interconnection agreements, and, for this reason, recovery is precluded by the filed rate doctrine. This is true, even to the extent that Firstcom's promissory estoppel and fraud claims seek monetary damages because such an award would, in effect, vary the rates established by the interconnection agreements executed by the parties and filed with the MPUC. See Hill v. Bellsouth Telecomms., Inc., 364 F.3d 1308, 1315-16 (11th Cir. 2004); see also Marcus, 138 F.3d at 60-62 (2d Cir.1998) (holding that fraud or misrepresentation claims are barred by the filed rate doctrine because, when monetary damages are requested, such claims have the effect of challenging the filed rate). Therefore, the claims are barred by the filed rate doctrine.

In sum, the district court properly dismissed Firstcom's three state law claims against Qwest at summary judgment, though we disagree with the district court's reasoning to some extent. Firstcom's negligence claim is preempted by the Act, and Firstcom's promissory estoppel and fraud claims are barred by the filed rate doctrine.

IV.

We affirm the judgment of the district court.

_____

-17-