# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-2212

_____

Patricia Crumley, on behalf of     *
herself and all others similarly     *
situated,     *
    *     Appeal from the United States
         Appellant,     *     District Court for the
    *     District of Minnesota.
     v.     *
    *     [PUBLISHED]
Time Warner Cable, Inc., a     *
Division of Time Warner     *
Entertainment Company, Inc.,     *
    *
         Appellee.     *

_____

Submitted: February 13, 2009
Filed: February 25, 2009

_____

Before WOLLMAN, HANSEN, and BYE, Circuit Judges.

_____

PER CURIAM.

Patricia Crumley appeals the district court's[1] dismissal of this putative class action suit against Time Warner Cable, Inc. (Time Warner), in which she claims that

_____

[1]The Honorable Joan N. Ericksen, United States District Judge for the District of Minnesota, adopting the Report and Recommendation of the Honorable Jeanne J. Graham, United States Magistrate Judge for the District of Minnesota.

Time Warner overcharged its customers for cable television services. Crumley sought damages for unjust enrichment and for violating the Minnesota Prevention of Consumer Fraud Act, Minn. Stat. § 325F.69, subd. 1. The district court dismissed the suit under Federal Rule of Civil Procedure 12(b)(6), concluding that the claims were barred by the filed rate doctrine. Reviewing the district court's dismissal *de novo*, see Saunders v. Farmers Ins. Exch., 537 F.3d 961, 963 (8th Cir. 2008) (standard of review), we affirm.

In her complaint, Crumley alleges that Time Warner overcharged or double billed its customers in Minneapolis, Minnesota, for network upgrades that it made to its cable systems. According to Crumley, Time Warner recovered its costs for the upgrade from its customers twice. The first recovery came when Time Warner added a surcharge to its customers' bills pursuant to a "social contract" that Time Warner had entered into with the Federal Communications Commission (FCC) in 1995. Under the social contract, Time Warner agreed to make extensive upgrades–to the tune of $4 billion–to its cable systems to provide its customers with expanded capacity for additional television networks and channels as well as advanced telecommunications services. In return, the social contract allowed Time Warner to charge its customers a surcharge of up to $180 each over a five-year period between 1996 and 2000 to cover the cost of the upgrade. Crumley alleges that Time Warner then charged its customers a second time for the same upgrades in 2001 by filing an FCC "Form 1235" with the City of Minneapolis to incorporate a network upgrade fee into its basic cable rate, but that it relied on the same upgrade required by the social contract to justify the network upgrade fee. Crumley sought a declaratory judgment that Time Warner's use of Form 1235 to recover costs already recovered pursuant to the social contract "was fraudulent and unlawful" (Appellant's App. at 22), and she sought damages.

The Cable Act of 1992 precludes the regulation of cable rates as long as the cable system is subject to effective competition, as determined by the FCC. See 47 U.S.C. § 543(a)(1). However, "any cable system that does not face 'effective

competition,' as defined in the Act, is subject to rate regulation." Time Warner Entm't Co. v. F.C.C., 56 F.3d 151, 162 (D.C. Cir. 1995) (citing 47 U.S.C. § 543(a)(2)), cert. denied, 516 U.S. 1112 (1996). The Cable Act vests regulatory authority over such cable systems in local franchising authorities (LFAs), see 47 U.S.C. § 543(a)(2)(A), and grants oversight authority to the FCC, see id. § 543(a)(6). LFAs may only regulate cable rates to the extent provided in the Cable Act. See id. § 543(a)(1) ("Any franchising authority may regulate the rates for the provision of cable service, . . . but only to the extent provided under this section."). The rates for basic cable service must be reasonable, id. § 543(b)(1), and are subject to regulations issued by the FCC, id. § 543(b)(2). The parties do not contest that this regulatory regime applies to the provision of cable service at issue here.

The LFA for Time Warner's Minneapolis cable system is the City of Minneapolis. According to Crumley's complaint, Time Warner filed a Form 1235 with the City of Minneapolis on October 2, 2001, adding a network upgrade surcharge to its regulated service rates for basic cable service, without having completed the required upgrades to support the upgrade surcharge. The upgrade surcharge went into effect when the City of Minneapolis failed to take action on Time Warner's Form 1235.

The "filed rate doctrine" forbids a regulated entity from charging a rate for its services other than the rate on file with the appropriate regulatory authority. Ark. La. Gas Co. v. Hall, 453 U.S. 571, 577 (1981). While "[t]he filed rate doctrine has its origins in [Supreme] Court[] cases interpreting the Interstate Commerce Act, [the doctrine] has been extended across the spectrum of regulated utilities." Id. (internal citations omitted). The filed rate doctrine also applies to rates filed with state agencies. See Firstcom, Inc. v. Qwest Corp., No. 07-3548, 2009 WL 291064, *7 (8th Cir. Feb. 9, 2009) (applying filed rate doctrine to a challenge to a telecommunications interconnection agreement filed with a state public utilities commission). The purposes of the filed rate doctrine, which include the "preservation of the agency's

primary jurisdiction over reasonableness of rates and the need to insure that regulated companies charge only those rates of which the agency has been made cognizant," Ark. La. Gas Co., 453 U.S. at 577-78, apply equally to the regulation of rates for cable service in areas lacking "effective competition" as controlled by the Cable Act.

Crumley's attempts to characterize her complaint as one challenging Time Warner's actions as fraudulent do not change the fact that what she challenges is the rate on file with the City of Minneapolis. If Crumley's suit was successful, and she received the damages remedy she seeks in the complaint, Time Warner would not be allowed to charge the allegedly unlawful upgrade fee, which, according to Crumley's complaint, was incorporated into its basic cable fee on file with the City of Minneapolis when it filed Form 1235. This is directly contrary to the filed rate doctrine, which "'prohibits a party from recovering damages measured by comparing the filed rate and the rate that might have been approved absent the conduct in issue.'" Firstcom, 2009 WL 291064, at *7 (quoting H.J. Inc. v. Nw. Bell Tel. Co., 954 F.2d 485, 488 (8th Cir.), cert. denied, 504 U.S. 957 (1992)). That Crumley's claim involves allegations of fraud is of no moment. See Am. Tel. & Tel. Co. v. Cent. Office Tel., Inc., 524 U.S. 214, 222 (1998) ("[E]ven if a carrier intentionally misrepresents its rate and a customer relies on the misrepresentation, the carrier cannot be held to the promised rate if it conflicts with the published tariff."); Firstcom, 2009 WL 291064, at *8 ("[T]o the extent Firstcom seeks recovery for a price discount it was allegedly entitled to [under claims of promissory estoppel and fraud], its claims are barred by the filed rate doctrine."). In Firstcom, we rejected a fraud exception to the filed rate doctrine and declined to follow a Ninth Circuit case that "held that the filed rate doctrine did not preclude a fraud claim provided that the damages could be proved without attacking the filed rate." Firstcom, 2009 WL 291064, at *7-8 (disagreeing with In re NOS Commc'ns MDL No. 1357, 495 F.3d 1052, 1060 (9th Cir. 2007)). This case is directly governed by the filed rate doctrine because, if allowed to proceed, "the court's decision will [impact] . . . agency . . . rate determinations." H.J. Inc., 954 F.2d at 489 (dismissing a RICO claim under the filed rate doctrine).

The district court's judgment granting Time Warner's motion to dismiss is affirmed.

_____