STEPHEN A. HIGGINSON, Circuit Judge,
concurring in part and dissenting in part:
The majority opinion concludes that because Sprint is an interexchange carrier (“IXC”) (1) it cannot be an information service provider, (2) it cannot benefit from the ESP exemption, and accordingly, (3) it must pay the tariff rates on its VoIP services. Each conclusion contravenes longstanding precedent holding that IXCs can provide information services, and when they do, they can benefit from the ESP exemption. I thus respectfully dissent from Part II.A.2 and II.B of the majority opinion.
First, an IXC can also be an information service provider (that is, the IXCs can provide information services). The FCC has long recognized that IXCs can provide information (or before 1996, enhanced) services.[1] And in line with those precedents, the FCC has specifically noted that Sprint offers information services. Policies, & Rules Implementing the Tel. Disclosure & Dispute Resolution Act, 9 F.C.C. Rcd. 6891, 6893 (¶ 14) (F.C.C. 1994); Application for Consent to Assignment of Licenses & Transfer of Control of Certain Subsidiaries of GTE Corp. & United Telecomms., Inc. to U.S. Sprint Commc’ns Co., 1752-CF-AL-(534)-86, 1986 WL 291870, at *4 (F.C.C. June 18, 1986).
*579 Second, when an IXC offers information services, it benefits from the ESP exemption. 47 C.F.R. § 69.5 (“Carrier’s carrier charges shall be computed and assessed upon all interexchange carriers that use local exchange switching facilities for the provision of interstate or foreign telecommunications services.” (emphasis added)); Petition for Declaratory Ruling That AT & T’s Phone-to-Phone IP Telephony Servs, are Exempt from Access Charges (“IP in the Middle”), 19 F.C.C. Rcd. 7457, 7465 (¶ 14) (F.C.C. 2004) (“Under our rules, access charges are assessed on interex-change carriers that use local exchange switching facilities for the provision of interstate or foreign telecommunications senices.” (emphasis added)). Indeed, the FCC expressly rejected the majority opinion’s view that the ESP exemption cannot benefit IXCs. See In the Matters of Nw. Bell Tel. Co. Petition for Declaratory Ruling & Wats Related & Other Amendments of Part 69 of the Comm’n’s Rules., 7 F.C.C. Rcd. 5644, 5645 (¶ 5) (F.C.C. 1992) (“Nw. Bell Tel.”); In the Matter of Wats Related & Other Amendments of Part 69 of the Comm’n’s Rules, 3 F.C.C. Red. 496, 497 (¶ 10) (F.C.C. 1988). The FCC explained:
[A commenter] argues that this Commission exempted enhanced service providers, rather than enhanced services, from interstate access charges and that [an IXC] should not receive an access charge exemption even when it is offering enhanced services. This argument misconstrues our rules. Under those rules entities that offer both interex-change services and enhanced services are treated as carriers with respect to the former offerings, but not with respect to the latter. Thus, interexchange carriers ... are eligible for an interstate access charge exemption for their enhanced service offerings. Although the access charge orders refer to “enhanced service providers,” we have never limited that category to entities that provide only enhanced services. Rather, any entity that actually provides enhanced services should be treated as an “enhanced service provider,” regardless of any other services that entity might provide.
Nw. Bell Tel., 7 F.C.C. Rcd. at 5645 (¶ 5). And the FCC’s decision that an IXC providing information services can be regulated like an information service provider is consistent with both the FCC’s and the courts’ longstanding view that “one can be a common carrier with regard to some activities but not others.” Nat’l Ass’n of Regulatory Util. Comm’rs v. F.C.C., 533 F.2d 601, 608 (D.C. Cir. 1976); accord Verizon v. F.C.C., 740 F.3d 623, 653 (D.C. Cir. 2014); Cellco P’ship v. F.C.C., 700 F.3d 534, 538 (D.C. Cir. 2012); In the Matters of Amendment of Sections 64.702 of the Comm’n’s Rules & Regulations (Third Comput. Inquiry), 2 F.C.C. Red. 3035, 3060-61 (¶ 179) (F.C.C. 1987), vacated and remanded on other grounds sub nom. California v. F.C.C., 905 F.2d 1217 (9th Cir. 1990).
These twin errors result in the majority opinion’s adopting a rule of decision that has never been blessed by either the FCC or another court. Every other case or administrative decision to decide whether a VoIP service provider was required to pay tariff rates or rates pursuant to the ESP exemption focused on the specifics of the VoIP service at issue to determine whether it was an information service or a telecommunication.[2] The majority opinion is *580 alone in focusing on whether the VoIP provider happens to be an IXC. Indeed, even the Comprehensive Reform Order, the only authority the majority cites, indicates that determining which payment regime governs VoIP services depends on the “particular traffic exchanged between a LEC and interexchange carriers and information service providers.” Comp. Reform Order, 26 F.C.C. Red. 17,663, 18,015 (¶ 956) (F.C.C. 2011) (emphasis added) (quotations and citations omitted).
Moreover, the majority opinion’s justification for its unique approach is thin. The majority opinion exclusively relies on one paragraph of the Comprehensive Reform Order, paragraph 957, which provides:
[T]o the extent that interexchange VoIP services are transmitted to the LEC directly from an information service provider, such traffic is subject to pre-1996 Act obligations regarding “exchange access,” although the access charges imposed on information service providers were different from those paid by IXCs. Specifically, under the ESP exemption, rather than paying intercar-rier access charges, information service providers were permitted to purchase access to the exchange as end users, either by purchasing special access services or “pay[ing] local business rates and interstate subscriber line charges for their switched access connections to local exchange company central offices.”
Comp. Reform Order, 26 F.C.C. Rcd. at 18,015-16 (¶ 957). The majority opinion seizes on paragraph 957’s statement that IXCs paid different exchange access rates than information service providers. In doing so, the majority opinion ignores the longstanding FCC authority that permitted IXCs to benefit from the ESP exemption when they provided information services (that is, acted as information service providers). Nothing in Paragraph 957 was intended to depart from this settled rule. On its face, Paragraph 957 is a historical description of the pre-1996 regulatory regime, not an announcement of a new regulatory policy. Accordingly, in my view, the better reading of Paragraph 957 is that it accurately described the established regulatory regime: IXCs paid tariff access charges when they acted as IXCs and paid the ESP exemption rate when they acted as information service providers.
And unfortunately, the majority opinion’s interpretation is not costless; it contravenes the FCC’s policy decisions. Providing the ESP exemption to only non-IXCs “raise[s] questions of discrimination and would bestow an unfair advantage on non-carrier competitors.” Nw. Bell Tel., 7 F.C.C. Rcd. at 5645 (¶ 5). For this reason the FCC' has been careful to ensure that its decisions classifying VoIP services do not place IXCs at competitive disadvantages. See IP in the Middle, 19 F.C.C. Rcd. at 7469-70 (¶ 19) (“Commenters argue that it is inequitable to impose access charges on AT & T’s specific service if access charges do not apply to other types of IP-enabled voice services. The Commission is sensitive to the concern that disparate treatment of voice services that both use IP technology and interconnect with the PSTN could have competitive implications. ... [0]ur ruling here should not place AT & T at a competitive disadvantage.”).
*581 Consequently, I would remand to the district court to determine whether the VoIP calls here are information services or telecommunications. The district court did not reach the issue, holding instead that because Sprint owed CenturyLink access charges regardless of whether the VoIP calls were a telecommunications or an information service, Sprint was required to pay CenturyLink’s tariffs. I believe that this district court’s holding is also erroneous.
Under Section 251(g) Sprint was required to pay CenturyLink in accordance with pre-1996 law. The district court correctly found that before 1996, Sprint owed CenturyLink access charges regardless of whether Sprint was providing telecommunications or information services. Comp. Reform Order, 26 F.C.C. Rcd. at 18,015-16 (¶ 957) (“Regardless of whether particular VoIP services are telecommunications services or information services, there are pre-1996 Act obligations regarding LECs’ compensation for the provision of exchange access to an IXC or an information service provider.”). But the district court erred in concluding that the access charge Sprint owed must have been the tariffed rate. Instead, if the VoIP calls are information services, Sprint’s access charge would be an end user rate set pursuant to the ESP exemption. Id. at 18,016 (¶ 957) (“Similarly, to the extent that interexchange VoIP services are transmitted to the LEC directly from an information service provider, such traffic is subject to pre-1996 Act obligations regarding ‘exchange access,’ although the access charges imposed on information service providers were different from those paid by IXCs. Specifically, under the ESP exemption, rather than paying intercarrier access charges, information service providers were permitted to purchase access to the exchange as end users, either by purchasing special access services or ‘pay[ing] local business rates and interstate subscriber line charges for their switched access connections to local exchange company central offices.’ ” (emphases added)).
This error is understandable. The FCC “at times has used the term ‘access charges’ colloquially as synonymous with carrier’s carrier access charges [charges at the telecommunications rate], notwithstanding the fact that access charges actually encompass a broader category of charges.” Id. at 18,016 n.1961. However, properly understood, “access charge” refers to both the tariff rate IXCs pay to LECs and the end user rate that subscribers pay to LECs (including entities that pay a subscriber rate under the ESP exemption). See, e.g., id. at 18,015-16 (¶ 957); Petitions of Qwest Corp. for Forbearance Pursuant to hi U.S.C. § 160(c) in the Denver, Minneapolis-St. Paul, Phx., & Seattle Metro. Statistical Areas, 23 F.C.C. Rcd. 11729, 11748 (¶ 25) (F.C.C. 2008); Deployment of Wireline Services Offering, 15 F.C.C. Rcd. 385, 406 (¶ 45) (F.C.C. 1999), vacated in part on other grounds sub nom. WorldCom, Inc. v. F.C.C., 246 F.3d 690 (D.C. Cir. 2001); Mts & Wats Mkt. Structure, 93 F.C.C.2d 241, 250 (¶ 23) (F.C.C. 1983).
The district court failed to determine whether Sprint was required to pay Centu-ryLink’s tariffs or end user access charges under the ESP exemption. Because this determination governs the rates that Sprint owed to CenturyLink, I would vacate the district court’s conclusion as to the federal tariff claim and remand to the district court. Likewise, because the district court’s Section'201(b) ruling is contingent on a federal law violation, I would vacate and remand that claim as well.
I respectfully dissent in part.

. See, e.g., In Re Policy & Rules Concerning Interstate, Interexchange Marketplace, 16 F.C.C. Red. 7418, 7442 (¶ 40) (F.C.C. 2001) ("[C]arriers not subject to the separate subsidiary requirement [the Bell Operating Companies] acquire transmission capacity pursuant to the same, prices, terms, and conditions reflected in their tariffs when their own facilities are used, does not prohibit them from offering packages of telecommunications service, including interstate, domestic, interex-change service or local exchange service, and enhanced services at a single price.”); Policy & Rules Concerning the Interstate, Interexchange Marketplace Implementation of Section 254(g) of the Commc’ns Act of 1934, 13 F.C.C. Rcd. 21531, 21552 (¶ 39) (F.C.C. 1998) ("We seek comment on whether there are any anti-competitive effects of allowing nondominant interexchange carriers to bundle, or provide discounts on packages of, enhanced services and interstate, domestic, interexchange services, when such services, in turn, are packaged with local exchange services.”); Policies & Rules Implementing the Tel. Disclosure & Dispute Resolution Act, 8 F.C.C. Red. 6885, 6892 n. 62 (¶ 40) (F.C.C. 1993) ("We also note that an IXC who is also an IP [information provider] may not tariff the charge for the information service, as this would violate the prohibition against an IXC tariffing its enhanced services.”); Mountain States Tel. & Tel. Co., Nw. Bell Tel. Co., Pac. Nw. Bell Tel. Co. Petition for Waiver of Section 64.702 of the Comm’n’s Rules & Regulations to Provide Protocol Conversion as an Adjunct to a Basic Packet Switched Network, 3 F.C.C. Red. 3135, 3137 (¶ 11) (F.C.C. 1988) ("[I]f an interex-change carrier also provides an enhanced service in conjunction with packet switching, it would be afforded the protections established in the Protocol Waiver Order the same as any other competitive enhanced packet service provider.”); Pleading Cycle Established for Comments on Amendment to Bell-south’s Plan for Comparably Efficient Interconnection for Voice Messaging Servs., 3 F.C.C. Red. 5584, 5584 (¶ 2) (F.C.C. 1988) ("These network services will be made available to all local exchange customers on an optional basis, including interexchange carriers using those facilities to provide enhanced services.”); see also United States v. GTE Corp., 603 F.Supp. 730, 733 (D.D.C. 1984) ("The decree in this case, by contrast, permits GTE to enter the interexchange business (by acquiring Sprint) and to remain in the information services business even though it will also continue to engage in the local telephone business.”).

. See, e.g., Charter Advanced Servs. (MN), LLC v. Lange, 15-cv-3935 (SRN/KMM), 2017 WL 1901414, at *5 (D. Minn. May 8, 2017); PAE-TEC Commc’ns, Inc. v. CommPartners, LLC, No. 08-0397(JR), 2010 WL 1767193, at *3 (D.D.C. Feb. 18, 2010); Sw. Bell Tel., L.P. v. *580 Mo. Pub. Serv. Comm’n, 461 F.Supp.2d 1055, 1082 (E.D. Mo. 2006), aff'd, 530 F.3d 676 (8th Cir. 2008); Vonage Holdings Corp. v. Minn. Pub. Utils. Comm’n, 290 F.Supp.2d 993, 999 (D. Minn. 2003); IP in the Middle, 19 F.C.C. Rcd. at 7465-66 (¶¶ 12-14); Petition for Declaratory Ruling (Pulver), 19 F.C.C. Rcd. 3307, 3314 (¶¶ 12-14) (F.C.C. 2004); Fed.-State Joint Bd. on Universal Serv., 13 F.C.C. Rcd. 11501, 1998 WL 166178, at *28 (¶¶ 86-88) (F.C.C. 1998).